# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN CORYELL KELSEY II,

        Defendant-Appellant.

UNPUBLISHED
April 17, 2018

No. 329229
Ingham Circuit Court
LC No. 14-001380-FH

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of first-degree fleeing or eluding a police officer causing death, MCL 750.479a(1) and (5), and driving while license suspended, MCL 257.904. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 20 to 45 years' imprisonment for the fleeing or eluding conviction and 93 days in jail for the driving while license suspended conviction. We affirm defendant's convictions, but remand for a *Crosby*[1] hearing in accordance with *People v Lockridge*, 498 Mich 358, 396-399; 870 NW2d 502 (2015).

## I. FACTS

Defendant's convictions arise from a high-speed police chase during the early morning hours of December 7, 2014. Grant Whitaker, an Ingham County Sheriff's Deputy, was pursuing a white sport utility vehicle (SUV) that ignored police commands to stop. During the pursuit, Whitaker lost control of his vehicle, which left the roadway and struck a tree. Whitaker was killed in the accident. The principal issue at trial was the identity of the driver of the SUV. According to witnesses, defendant had been drinking at a nearby bar and, shortly before the accident, he left the bar driving a white 2003 GMC Yukon Denali, traveling at a high rate of speed. The SUV under pursuit was depicted in surveillance videos and witnesses familiar with defendant identified that vehicle as the type of car defendant normally drove. Those same witnesses testified that they did not see defendant drive that vehicle after the accident. One

---

[1] *United States v Crosby*, 397 F 3d 103, 117-118 (CA 2, 2005).

witness, the girlfriend of defendant's friend, testified that defendant called on the night of the accident and stated that he had just been involved in a police chase.

Defendant raises several issues in a brief filed by former appointed appellate counsel, a supplemental brief filed by newly appointed appellate counsel, and a pro se brief filed by defendant pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4 (Standard 4 brief).

## II. VOID FOR VAGUENESS

Defendant argues in his Standard 4 brief that the statute under which he was convicted, MCL 750.479a,[2] is void for vagueness. We disagree.

" 'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.' " *People v Boomer*, 250 Mich App 534, 538-539; 655 NW2d 255 (2002), quoting *Grayned v City of Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972). A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the prohibited conduct, (2) it encourages arbitrary or discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms. *Id*. at 539.

To provide fair notice of proscribed conduct, a statute cannot use terms that require persons of ordinary intelligence to speculate regarding its meaning and differ about its application. *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). A statute provides fair notice when it "give[s] a person of ordinary intelligence a reasonable opportunity to know what is prohibited . . . ." *Id*. Fair notice exists when the statute's meaning can be determined by referencing judicial interpretations, common law, dictionaries, treatises, or the common meanings of words. *People v Beam*, 244 Mich App 103, 105; 624 NW2d 764 (2000).

Defendant's argument implicates MCL 750.479a(5), which elevates the seriousness of a fleeing or eluding violation when the violation "results in the death of another individual." Defendant argues that the statute is unconstitutionally vague because it does not define the meaning of "results in the death of another." This phrase has been defined to mean that the defendant's conduct must have been both the factual and proximate cause of the victim's death. *People v Feezel*, 486 Mich 184, 193-195; 783 NW2d 67 (2010) (concerning failing to stop after an accident resulting in death). Accordingly, defendant's vagueness argument fails because the meaning of the phrase can be fairly ascertained by reference to judicial interpretation.

## III. VENUE

Defendant argues that the trial court erred by denying his motion to change venue on the basis of pretrial publicity. We disagree. This Court reviews for an abuse of discretion whether

---

[2] Although defendant's Standard 4 brief cites MCL 750.479(a)(5), that statute proscribes resisting or obstructing a police officer. Defendant was convicted of fleeing or eluding a police officer, causing death, contrary to MCL 750.479a(1) and (5).

the trial court erred by denying a defendant's motion for a change of venue. *People v Lee*, 212 Mich App 228, 252; 537 NW2d 233 (1995). The trial court abuses its discretion when its decision falls outside range of reasonable and principled outcomes, or when it makes an error of law. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

A criminal defendant has both state and federal constitutional rights to be tried by an impartial jury. *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). "In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v Dowd*, 366 US 717, 722; 81 S Ct 1639; 6 L Ed 2d 751 (1961).

Defendant argues that a change of venue was required because several jurors had heard about the case in the media, including on the morning of trial. However, defendant incorrectly asserts that adverse pretrial publicity creates a presumption of prejudice. "The existence of pretrial publicity, standing alone, does not necessitate a change of venue." *Lee*, 212 Mich App at 253. While a juror who has formed an opinion about the matter on trial cannot be impartial, "[i]t is not required, however, that jurors be totally ignorant of the facts and issues involved." *Irvin*, 366 US at 722. A juror is sufficiently impartial if he or she states an ability to set aside a preexisting opinion and render a verdict on the basis of only the evidence presented in court. *Id*. at 723. When jurors have sworn to tell the truth and testify under oath that they can be impartial, the presumption is that those jurors will honor their oath. *People v DeLisle*, 202 Mich App 658, 663; 509 NW2d 885 (1993). The burden is on the defendant to show either (1) a strong pattern of community feeling due to such extensive, inflammatory publicity that "jurors could not remain impartial when exposed to it" or (2) "the jury was actually prejudiced or the atmosphere surrounding the trial was such as would create a probability of prejudice." *People v Passeno*, 195 Mich App 91, 98; 489 NW2d 152 (1992), overruled in part on other grounds by *People v Bigelow*, 229 Mich App 218, 220 (1998).

Defendant is not entitled to a presumption of prejudice simply because some of his jurors were exposed to media coverage.[3] In this case, defendant has shown neither a strong pattern of community feeling nor an atmosphere that would create a probability of prejudice. Of the 12 jurors who decided defendant's case, one juror heard about the case "four or five months" before trial and did not have an opinion about the facts of the case or defendant's guilt. One juror heard about the case on television when it happened, but did not have an opinion about defendant's guilt or innocence. One juror had read five or six articles about the case when it happened but had no opinion about the facts or defendant's guilt. Two jurors had heard about the case on television on the morning of the trial—those jurors only heard that a jury would be selected. One juror had seen the case mentioned several times in the media and believed that "[t]he media is very persuasive," but she had not been persuaded and believed she could set aside what she read. Six jurors had not heard about the case. Of the jurors who had heard about the case, all indicated

---

[3] We note that defendant has attempted to expand the record by submitting newspaper articles as exhibits to his brief on appeal that are not part of the lower court record. This Court does not generally allow a defendant to expand the record on appeal. *People v Shively*, 230 Mich App 626, 628 n 1; 584 NW2d 740 (1998). Therefore, we decline to consider these exhibits.

that they did not have a preexisting opinion that would affect their verdict. The trial court did not abuse its discretion in denying defendant's motion for a change of venue.

Defendant complains that one juror was prejudiced because his wife worked for the Fraternal Order of Police. The juror disclosed that his wife worked as a secretary for that organization, but maintained that her work did not affect his ability to be fair and impartial. After questioning the juror about his wife, defense counsel stated that he did not have any objection to allowing the juror to remain on the jury, despite his wife's employment. Defense counsel's affirmative approval to allowing the juror to remain on the jury waived any claim of error with respect to this issue. See *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011).

## IV. PUBLIC TRIAL

Defendant argues in his Standard 4 brief that the trial court violated his right to a public trial by ordering his friends and family out of the courtroom during voir dire. Defendant did not argue below that the trial court violated his right to a public trial; thus, this issue is not preserved and our review is for plain error affecting defendant's substantial rights. See *People v Vaughn*, 491 Mich 642, 650-654; 821 NW2d 288 (2012); *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994).

The Michigan and United States Constitutions provide the right to a public trial. US Const, Am VI; Const 1963, art 1, § 20. The right to a public trial includes the right to public voir dire proceedings. *Vaughn*, 491 Mich at 652. However, "[a]lthough a public trial is guaranteed by the Constitution, our Legislature has specifically provided that 'for good cause' witnesses may be excluded." *People v Insley*, 36 Mich App 593, 597; 194 NW2d 20 (1971) (citation omitted).

In this case, there is no indication in the record that the trial court closed the trial to the public during court proceedings. Rather, on the first day of trial, before jury selection, the prosecution sought to sequester the witnesses for both sides. Defense counsel agreed with this request. The prosecutor noted that a couple of the witnesses had been asked to leave the courtroom, referring to defendant's parents, Marcia McGarry and Frank Kelsey. Kelsey appeared on the prosecution's witness list and the prosecutor explicitly referred to McGarry as one of the "couple of the witnesses" who had been asked to leave the courtroom. Defendant does not identify in his brief any other friends who were asked to leave the courtroom, and it is not clear or obvious that any other excluded friends were not also potential witnesses subject to sequestration. Because there is no indication in the record that the trial court closed the courtroom to persons who were not subject to the court's sequestration order, defendant has not established a violation of his right to a public trial.

## V. PRIOR RECORDED STATEMENT

Defendant argues, both through appellate counsel and in his Standard 4 brief, that the trial court erred by admitting the prior recorded statement of Tony Hildabridle. We conclude that this issue is waived.

A defendant waives an issue by expressly approving of the trial court's action. *People v Carter*, 462 Mich 206, 216; 612 NW2d 144 (2000). A waiver extinguishes any error, leaving nothing for this Court to review. *Id*. at 215. A defense counsel's affirmative statement that he or she has no objections is an express approval of the trial court's action. *Kowalski*, 489 Mich at 504-505. In this case, Tony Hildabridle testified at trial that he had no memory of his conversations with defendant on December 7, 2014, or of an interview with the police on December 12, 2014. Outside the presence of the jury, the prosecutor attempted to refresh Tony's memory by playing his prior recorded police interview. After Tony denied that the recording refreshed his memory, the prosecutor moved to play excerpts from the recording for the jury under MRE 803(5). The trial court asked defense counsel, "[A]re you in agreement with that?" to which counsel replied, "Yes, your honor." Defense counsel, by affirmatively agreeing that Tony's prior recorded statements could be admitted, waived this claim of error.

## VI. SUFFICIENCY OF THE EVIDENCE

Defendant argues that his convictions violate his right to due process because there was insufficient evidence of his identity to support them. We disagree.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748, amended 441 Mich 1201 (1992). We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). This Court reviews the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id*. [I]dentity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Circumstantial evidence and reasonable inferences can sufficiently prove the elements of a crime. *People v Fennell*, 260 Mich App 261, 270; 677 NW2d 66 (2004).

Extensive circumstantial evidence supports defendant's identity as the driver of the vehicle that was fleeing from the police. Deputy Richard Hoeksema testified that he and Deputy Grant Whitaker were chasing a large, white SUV. Amber Peek, an employee at the Dam Site Inn, testified that defendant drove a white Suburban SUV and was at the bar on the evening of the chase. Brian Hildabridle stated that he and defendant left the bar and smoked marijuana in the parking lot before defendant got into his white SUV. Peek testified that defendant "peeled out" into the street, driving fast. Kathryn Stein testified that she was leaving the bar when she saw a white Suburban-like SUV drive past her vehicle at an alarming speed. Bruce Stein testified that the SUV was traveling about 80 miles an hour on a road that goes into Stockbridge.

Several witnesses identified a photo of the SUV involved in the police chase as the same type of vehicle that defendant drove. These witnesses also testified that they did not see defendant drive the vehicle after the accident. The police determined that a white 2003 GMC Yukon Denali XL was registered to defendant's father. The police searched both defendant's and his parents' residences on December 16, 2014, and found several vehicles, but they did not find the 2003 GMC, even though an effective insurance policy for a 2003 GMC was found inside defendant's residence. Detective Johnston also found that defendant had twice called Jerry Strunk on the morning of December 7, 2014, and Strunk's property contained scrap piles and vehicle parts. Viewed in a light most favorable to the prosecution, the evidence was sufficient to

enable a reasonable jury to find beyond a reasonable doubt that defendant was the driver of the white SUV that Deputy Whitaker was pursuing when he lost control of his vehicle and struck a tree, resulting in his death.

## VII. PROSECUTORIAL MISCONDUCT

Defendant raises several claims of prosecutorial misconduct, none of which were preserved with an appropriate objection in the trial court. See *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Accordingly, we review these claims for plain error affecting defendant's substantial rights. *Id*. at 235. This Court evaluates claims of prosecutorial misconduct on a case-by-case basis, reviewing the prosecutor's conduct in context, and in light of the defendant's arguments and the evidence presented in the case. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

A prosecutor can deny a defendant a fair trial by making improper remarks that infringe on the defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). The prosecutor commits misconduct if the prosecutor abandons his or her responsibility to seek justice and, in doing so, denies the defendant a fair and impartial trial. *Dobek*, 274 Mich App at 63.

First, defendant argues that the prosecutor improperly shifted the burden of proof during closing argument by stating that defendant failed to produce the SUV. "[A] prosecutor may not imply in closing argument that defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Green*, 131 Mich App 232, 237; 345 NW2d 676 (1983) (citations omitted). Due process requires that the prosecution carry the burden of proving a defendant's guilt beyond a reasonable doubt, and entitles the accused to a presumption of innocence. *In re Winship,* 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). However, prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Prosecutors have "great latitude regarding their arguments" in closing, and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236.

In this case, the prosecutor argued in closing: "We also know that [the SUV that defendant was driving was] not in storage. That was a lie because there is no receipts, no documentation of any storage facilities at either of the residences, the defendant's or his parents." A prosecutor's statement that inculpatory evidence is undisputed does not improperly shift the burden to defendant to provide contradictory evidence, "particularly where someone other than the defendant could have provided contrary testimony." *People v Perry*, 218 Mich App 520, 538-539; 554 NW2d 362 (1996), aff'd 460 Mich 55 (1999). Witnesses testified that a search of defendant's property and that of his parents revealed an effective insurance policy for a 2003 GMC, but neither the vehicle nor any storage receipts were located. It was reasonable for the prosecutor to infer from the failure to locate any storage receipts that the vehicle was not in storage.

Second, we reject defendant's argument that the prosecutor improperly shifted the burden of proof by commenting on defendant's failure to produce exculpatory evidence. Defendant's argument is based on the following portion of the prosecutor's closing argument:

> So also think about this: The defendant had to go home from the Dam Site Inn that night. He had to travel west to do that. So if it's not him in these videos, how did he get home? We know he went west in the Stockbridge area. Everybody testified—and you have the ability to check for yourselves. There are no other white SUVs travelling in that direction that night during that time. So if not him, where did you go?

Viewed in context, the prosecutor did not suggest that defendant had to demonstrate that he was not a part of the sequence of events described. Rather, the prosecutor referred to known evidence and argued reasonable inferences that could be drawn from that evidence. There was no plain error.

Third, defendant argues that the prosecutor made an improper civic duty argument. A prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide a case on the basis of civic duty. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005). An appeal for justice may be an appeal to civic duty. See *People v Abraham*, 256 Mich App 265, 275; 662 NW2d 836 (2003). However, "asking the jury to convict on the basis of the evidence produced at trial" is not an appeal to civic duty. *People v Bahoda*, 448 Mich 261, 284-285; 531 NW2d 659 (1995).

In this case, in his rebuttal argument, following his summary of the evidence at trial, the prosecutor stated:

> It's now your responsibility to pick up where Deputy Hoeksema and Deputy Whitaker left off. To render the only verdict supported by the evidence and demanded by justice:
>
> > Guilty of fleeing and eluding in the first degree. Guilty of driving while license suspended causing death. Don't let him get away again.

The prosecutor qualified his demand for justice by requesting a verdict "supported by the evidence." Thus, viewed in context, the prosecutor's argument was not an improper appeal to the jury's civic duty.

Fourth, defendant argues that the prosecutor improperly vouched for certain witnesses by implying that he did or did not believe them. "[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Bahoda*, 448 Mich at 276. However, the prosecutor may argue that the jury should or should not believe a witness. *McGhee*, 268 Mich App at 630. In closing argument, the prosecutor stated that Sandra Hale testified that, on the night of the crash, she answered Tony's phone and defendant stated that he had just run from the police. The prosecutor argued that because the call was 2-1/2 minutes long, "[m]ore must have been said during that conversation, but like other people in this case, she's trying not to point the finger at the Defendant any more

than she absolutely has to." The prosecutor noted that Brian also said that "[d]efendant told him that he thinks the police had just been chasing him . . . in the back roads of Stockbridge, exactly where this pursuit had just happened." The prosecutor then stated that defendant called Tony more than 20 times during the next two days but Tony claimed to be unable to remember anything defendant said. The prosecutor argued that the jury could consider Tony's long-term, personal relationship with defendant when considering Tony's potential bias or prejudice to weigh his testimony. The prosecutor argued that Tony

> does know those things, and he can't bring himself to point the finger at [defendant] with him in the room. But you heard how much more cooperative he was shortly after this incident when the Defendant wasn't there, when he was more honest with the officers. He told him about the conversations he had with the Defendant.

The prosecutor asked the jurors to ask themselves why Tony would say that defendant said things unless defendant actually said them. Viewed in context, the prosecutor's arguments did not state or imply that he had special knowledge of any witness's credibility. He instead argued that, based on the evidence presented at trial, the jury should believe certain witnesses and not others. The prosecutor's arguments did not constitute improper vouching.

Fifth, defendant argues that the prosecutor improperly failed to produce microphone recordings that would have indicated that the officers were ordered to stop their pursuit of defendant. A criminal defendant can demonstrate that the prosecutor violated his or her due process rights under the Fourteenth Amendment if the prosecutor, in bad faith, failed to preserve material evidence that might have exonerated the defendant. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988). A prosecutor must produce any favorable evidence within his possession that is material to a defendant's guilt or punishment. *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). This *Brady* rule applies when the state fails to *disclose* evidence, but it does not apply when the state fails to *preserve* it. *Youngblood*, 488 US at 57-58. In the latter situation, if the defendant cannot show bad faith or show that the evidence was potentially exculpatory, the prosecutor's failure to preserve evidence does not deny the defendant due process. *Id*. at 57; *People v Hanks*, 276 Mich App 91, 95-96; 740 NW2d 530 (2007).

In this case, defendant speculates that if the officers had been wearing microphones, recordings might have revealed that the officers were ordered to stop their pursuit. Defendant has not offered any evidence or other information factually supporting his position that such evidence actually existed. Defendant's argument recognizes that there might have been no evidence for the prosecution to preserve because the officers may have been "not carrying the required equipment." Because defendant has not shown that such evidence actually existed, or that, if it existed, it would have exonerated him, he is not entitled to relief.

VIII. JURY NOTE PROCEDURE

Defendant argues that the trial court denied him a fair trial by failing to fully disclose a jury note, and by improperly responding to the note. First, the record does not support defendant's argument that the court failed to fully disclose the contents of the note. Although the

-8-

court did not fully state the contents of the note on the record, it preserved the note and it stated on the record that the parties had discussed the note in chambers, including how to respond to the note. Second, defense counsel acknowledged on the record that he agreed with the trial court's approach for responding to the jury's note. Counsel's express approval of the trial court's action waived this issue. See *Kowalski*, 489 Mich at 504-505. A waiver extinguishes any error. *Carter*, 462 Mich at 216.

## IX. INEFFECTIVE ASSISTANCE

Defendant raises several claims of ineffective assistance of counsel in both his supplemental brief and his Standard 4 brief. Because defendant did not raise these claims in a motion for a new trial or request for an evidentiary hearing in the trial court, and this Court denied his motions to remand, our review of these claims is limited to errors apparent from the record. See *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

A criminal defendant has the fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). The rights to counsel, due process, and a fair trial are intertwined:

> The Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause. [*Strickland v Washington*, 466 US 668, 684-685; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

To prove that his defense counsel was ineffective, defendant must show that defense counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Defendant must also show that there is a reasonable probability that counsel's deficient performance affected the outcome of trial. *Id*. at 694.

First, defendant argues that counsel was ineffective for failing to object to the prosecutor's conduct discussed earlier. Having concluded that the prosecutor's comments and conduct were not improper, this argument necessarily fails. Counsel is not ineffective for failing to make a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Second, defendant argues that counsel was ineffective for failing to seek a change of venue due to pretrial publicity. The record reflects that defense counsel did, in fact, move for a change of venue, but the trial court denied the motion. This argument is without merit.

Third, defendant argues that counsel was ineffective when selecting a jury. "[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy." *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001). Defendant faults defense counsel for remarking during voir dire that "jury selection is a little overrated." However, defense counsel followed that remark by stating that the purpose of voir dire is to "figure out who can be fair and impartial jurors." Counsel proceeded to question the jurors during voir dire, and he exercised challenges for cause and peremptory challenges. The record indicates that

defense counsel pursued voir dire in an attempt to select a fair and impartial jury for defendant. Defendant has not established that counsel's conduct during jury selection was objectively unreasonable.

Fourth, defendant argues that counsel inappropriately failed to challenge the admission of Tony's prior recorded statement. We disagree, because the statement was admissible under MRE 803(5). The types of statements listed in MRE 803 "are not excluded by the hearsay rule[.]" MRE 803. Under MRE 803(5), a recording may be admitted into evidence if the declarant once had knowledge about a matter, the declarant no longer recalls the matter, and the recording was made when the knowledge of the matter was fresh in the declarant's memory. *People v Daniels*, 192 Mich App 658, 667; 482 NW2d 176 (1991). Tony testified that he could not recall the events of December 7, 2014, or December 12, 2014. Sergeant Scott Singleton testified that he interviewed Tony in his police car, which recorded the interview. The interview took place five days after the charged offense that Tony was unable to recall at the time of trial. Tony did not deny that he gave the interview; he only claimed that he did not remember doing so. The testimonies of Hale and Brian corroborated Tony's recollection at the time his interview was recorded. Accordingly, the foundational requirements of MRE 803(5) were met. Counsel was not ineffective for failing to make a futile challenge to the admission of this evidence. See *Ericksen*, 288 Mich App at 201. Further, counsel did not err by treating the evidence as substantive evidence, rather than impeachment evidence. Statements admitted under MRE 803(5) may be considered "as substantive evidence[.]" *Daniels*, 192 Mich App at 669. Because the statements were admissible as substantive evidence, not impeachment evidence, there was no basis for defense counsel to object to the statements as improper impeachment.

Fifth, counsel did not err by challenging the prosecution's decision to call Tony as a witness on the basis that Tony might have possibly been asserting a Fifth Amendment right not to testify. There is no suggestion in the record that Tony was attempting to assert a Fifth Amendment right not to testify. Rather, he claimed to not remember the day he gave the statements or giving the statements themselves. The record establishes that Tony suffered from a lack of memory, not an attempt to invoke his privilege against self-incrimination. Therefore, counsel had no reason for pursuing arguments based on Tony's Fifth Amendment right not to incriminate himself.

Sixth, defendant asserts that counsel unreasonably allowed portions of Tony's statement that "were known to be false by the prosecution" to go uncorrected. Defendant does not indicate what portions allegedly were false or what evidence or information establishes the falsity of the statements. Because defendant merely announces his position that certain unspecified portions were known to be false, without providing any rationalization or factual support for this argument, he has abandoned this claim of error. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004).

Seventh, defendant argues that counsel was ineffective for not objecting to the trial court's conduct when the court failed to make the jury note part of the record under MCR 2.513, and that trial counsel was ineffective for failing to challenge the trial court's deadlocked jury instruction. MCR 2.513(N) states that "[i]f questions arise, the court and the parties shall convene, in the courtroom or by other agreed-upon means. The question shall be read into the record, and the attorneys shall offer comments on an appropriate response." The record discloses

that the parties discussed the jury note in chambers, and the contents of the note were not fully read into the record. To the extent that defense counsel's failure to have the full contents of the note read into the record was objectively unreasonable, defendant has not established resulting prejudice. A defendant is prejudiced if, but for defense counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *People v Pickens*, 446 Mich 298, 312; 521 NW2d 797 (1994). Although the note was not read into the record, it is apparent from the record that counsel was aware of the note's substance because the trial court indicated that "we discussed that in chambers, and that's how we came up with this approach to the further instruction to the jury." The note itself was also preserved. Because counsel was aware of the note's substance and the note itself was preserved, there is no basis for concluding that had the note been read into the record, the outcome of defendant's trial would have been different.

Defendant also argues that trial counsel was ineffective for failing to request the standard deadlocked jury instruction when the jury indicated that it was having trouble reaching a consensus. Although we agree that counsel erred by not requesting the standard deadlocked jury instruction, defendant has not established that he was prejudiced by counsel's error.

An instruction that encourages the jury to continue its deliberations may be deemed prejudicial if it violates ABA standard jury instruction § 5.4(b), as adopted in *People v Sullivan*, 392 Mich 324; 220 NW2d 441 (1974). *People v France*, 436 Mich 138, 164; 461 NW2d 621 (1990). That standard instruction provides as follows:

Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the Court may give an instruction which informs the jury:

(*i*) that in order to return a verdict, each juror must agree thereto;

(*ii*) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(*iii*) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(*iv*) that in the course of deliberations, a juror should not hesitate to re-examine his own views and change his opinion if convinced it is erroneous; and

(*v*) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or

threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement. [*Sullivan*, 392 Mich at 335 (quotation marks and citation omitted).]

"[C]oercion is at the very heart of the inquiry of whether a departure from ABA standard jury instruction 5.4 is a 'substantial departure.' " *People v Hardin*, 421 Mich 296, 314; 365 NW2d 101 (1984). Different language does not constitute a substantial departure when the language does not contain pressure, threats, embarrassing assertions, or other coercive wording. *Id*. at 315.

In this case, it is apparent from the jury's note that the jury was unable to agree. The note indicated that one of the jurors "want[ed] a hung Jury." In response, the trial court did not simply require the jury to continue its deliberations and did not repeat an instruction consistent with subsection (a). Trial counsel did not object to this procedure, which was contrary to the standard jury instruction. We cannot conceive of any plausible strategy reasons why, when faced with an issue of a potentially deadlocked jury, trial counsel did not request the standard deadlocked jury instruction and instead approved of a response that did not reduce the possibility that a juror would be coerced into abandoning his or her convictions and agreeing with the majority. The standard deadlocked jury instruction is designed to prevent prejudice during the jury's deliberations. Trial counsel's failure to object to the trial court's decision not to issue the standard deadlocked jury instruction was objectively unreasonable because no conceivable trial strategy supports the decision.

However, there is no indication that defendant was actually prejudiced by counsel's decision. To establish prejudice, defendant must show that there is a reasonable probability that counsel's error affected the outcome of the proceeding. *Pickens*, 446 Mich at 312. No prejudice is apparent from the record.

The instruction given by the trial court was a repetition of proper instructions previously given regarding the jury's duty to decide the facts based on the evidence. Communications that instruct the jury on the evidence and encourage it to continue deliberating are not presumptively prejudicial. *France*, 436 Mich at 163. Thus, defendant is not entitled to a presumption of prejudice. Additionally, a statement that the facts had been presented to the jury and it should continue deliberating "is innocuous, and does not coerce, encourage, or compel the jury to render a verdict." *Hardin*, 421 Mich at 317. Because the trial court only instructed the jury that it had the evidence and its duty was to decide the facts of the case on the basis of that evidence, the trial court's instruction was not unduly coercive.

In addition, the trial court had previously instructed the jury that: "Although you should try to reach agreement, none of you should give up your honest opinion about the case just because other jurors disagree with you or just for the sake of reaching a verdict. In the end, your vote must be your own, and you must vote honestly and in good conscience." This Court presumes that jurors follow their instructions. *Unger*, 278 Mich App at 235. The jurors had previously been instructed not to set aside their individual consciences.

Finally, the court did not require or threaten to require the jury to deliberate for an unreasonable length of time or unreasonable intervals. A reviewing court may also consider the amount of time between an instruction and the verdict when considering whether an instruction was unduly coercive. *Hardin*, 421 Mich at 320 (considering how long the jury deliberated, when it retired for the day, and when it reached its verdict). The trial court issued its instruction at 1:31 p.m. on Monday, June 8, 2015. The trial court later asked the jury whether it wished to continue deliberating or to go home and resume deliberating in the morning, and the jury indicated "they wanted to go home and continue in the morning." The court released the jury at 4:57 p.m. that evening. The jury deliberated until 10:36 a.m. on Tuesday, June 9, 2015. After the verdict was delivered, each of the jurors indicated that the verdict of guilty on Count 1 and guilty of a lesser charge on Count 2 was their verdict. That the jury continued to deliberate long after the trial court's instruction indicates that the jurors were not pressured to reach a decision contrary to their consciences. Accordingly, we conclude that defendant was not prejudiced by trial counsel's failure to object to the trial court's instruction.

Eighth, defendant argues that counsel was ineffective for failing to excuse the juror whose wife worked as a secretary for the Fraternal Order of Police. "[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy." *Johnson*, 245 Mich App at 259. Defendant bases his argument on his belief that by failing to remove the juror, trial counsel denied defendant a fair jury. As previously discussed, however, the juror expressly stated that his wife's work as a secretary for the Fraternal Order of Police did not affect his ability to remain fair and impartial. Trial counsel had the benefit of observing the juror's demeanor both during voir dire and during the subsequent questioning, when the juror assured the court that he could be fair and impartial. Defendant has not overcome the presumption that defense counsel's decision not to excuse the juror was sound strategy under the circumstances of this case.[4]

Ninth, defendant argues that trial counsel was ineffective for waiving issues, or failing to preserve claims of error, thereby subjecting those claims to limited review for plan error. Defendant does not identify which specific objections defense counsel allegedly failed to make and explain how an objection could have led to a different outcome on appeal. His failure to adequately argue this issue precludes appellate review of this claim. See *Matuszak*, 263 Mich App at 59.

Tenth, defendant argues that defense counsel was ineffective for not objecting to inadmissible evidence, including evidence that defendant used alcohol and marijuana on the night of the crime, and his identification by lay witnesses. Defendant argues that defense

---

[4] We note there is no evidence in the record to support defendant's assertion that the Fraternal Order of Police was involved with funeral or memorial arrangements for the victim. Additionally, the record does not support defendant's assertion that the juror deliberately withheld his wife's employment from the court. Such a disclosure would not have been responsive to the court's earlier questions during voir dire. In any event, the juror timely raised the issue on his own, before trial began.

counsel should have objected to the relevancy of his alcohol and marijuana use on the night of the offense. However, this evidence was probative to explain defendant's motive for fleeing from the police. See MRE 401. When the proofs are primarily circumstantial, a person's motive to commit a crime is highly relevant. *People v Fisher*, 449 Mich 441, 453; 537 NW2d 577 (1995). Counsel was not ineffective for failing to make a futile objection on the basis of relevancy. See *Ericksen*, 288 Mich App at 201. Additionally, defense counsel reasonably may have chosen not to object to this evidence on the basis that it was unduly prejudicial under MRE 403 because he recognized that such an objection was not likely to succeed and he did not want to draw attention to it. See *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008).

Regarding the identification evidence, trial counsel did in fact object to witness testimony identifying him in photographs. The trial court overruled counsel's objection with respect to witnesses who were in a superior position to identify defendant than the jury in light of their prior familiarity with defendant. Moreover, considering the trial court's ruling, it was not objectively unreasonable for counsel not to make repeated, futile objections. See *People v Knapp*, 244 Mich App 361, 386; 624 NW2d 227 (2001).

Eleventh, defendant argues that counsel was ineffective for failing to challenge the closure of the courtroom during voir dire, and for failing to object to defendant's prosecution under an unconstitutionally vague statute. As previously explained, these assertions are without merit. Accordingly, counsel was not ineffective for failing to make these futile challenges. See *Ericksen*, 288 Mich App at 201.

To the extent that defendant raises additional arguments that could be interpreted as additional claims that trial counsel was ineffective, defendant's failure to adequately argue those claims and rationalize the bases for his positions precludes appellate relief. See *Matuszak*, 263 Mich App at 59.

## X. SENTENCING

Defendant argues that the trial court erred in scoring the sentencing guidelines and also violated his Sixth Amendment right to a jury trial by engaging in judicial fact-finding to score the sentencing guidelines offense variables.

## A. EVIDENTIARY CHALLENGES TO THE SCORING OF THE OFFENSE VARIABLES

Defendant argues that the evidence did not support the trial court's scoring of offense variables (OVs) 3, 5, 9, 17, 18, and 19. Defendant objected to the scoring of OVs 3 and 18 at sentencing, but did not challenge the scoring of the remaining offense variables. Accordingly, only defendant's challenges to the scoring of OVs 3 and 18 are preserved.

Generally, this Court reviews for clear error a trial court's finding that a preponderance of the evidence supported a particular OV score. *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016). A finding is clearly erroneous if, after reviewing the entire record, this Court is definitely and firmly convinced that the trial court made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). We review a defendant's unpreserved scoring challenges for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

MCL 777.33 requires a trial court to assess 50 points for OV 3 when a victim was killed and the offender's body contained any amount of a controlled substance. MCL 777.33(1)(b) and (2)(c)(*iii*). The court must also assess 10 points for OV 18 if a vehicle operator was under the influence of a schedule 1 controlled substance. MCL 777.48(1)(c). Marijuana qualifies as a schedule 1 controlled substance. MCL 333.7212(1)(c). Brian testified that he and defendant smoked marijuana in the parking lot of the Dam Site Inn before defendant got into his white SUV and left. Defendant thereafter engaged the police in a high-speed chase in which Deputy Whitaker was killed. This evidence supports a finding that defendant had an amount of a schedule 1 controlled substance in his body at the time of the accident, in which a person was killed. Therefore, the trial court did not err by assessing 50 points for OV 3 and 10 points for OV 18.

Defendant received 15 points for OV 5 which is the appropriate score where "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). The victim's mother gave a statement at sentencing describing the family's grief and pain from the victim's death, which she described as a "tragic loss, an unthinkable, heartbreaking loss." Given these remarks, the trial court did not err by assessing 15 points for OV 5. See *People v Calloway*, 500 Mich 180, 187-188; 895 NW2d 165 (2017).

The trial court assessed 10 points for OV 9, which is the appropriate score when 2 to 9 victims "were placed in danger of physical injury or death[.]" MCL 777.39(1)(c). A person may be a victim if he or she was nearby when the crime occurred, even if he or she did not actually suffer harm. *People v Morson*, 471 Mich 248, 262; 685 NW2d 203 (2004). In this case, both Deputy Whitaker and Deputy Hoeksema were involved in the chase after defendant fled. The trial court properly determined that both officers were victims because defendant's decision to flee and elude the police placed both officers in danger. We reject defendant's argument that police officers cannot be counted as victims because they are involved in inherently dangerous activities. This Court has previously counted officers as victims for purposes of scoring OV 9. See *People v Terrell*, 312 Mich App 450, 465; 879 NW2d 294 (2015), rev'd in part on other grounds, 501 Mich 903 (2017). Moreover, a police officer is a person and MCL 777.39(2)(a) expressly provides that a court must "[c]ount *each person* who was placed in danger of physical injury . . . as a victim" (emphasis added). Accordingly, the trial court did not clearly err by scoring OV 9 at 10 points.

Defendant next argues that the trial court erred by assessing 10 points for OV 17, which directs a 10-point score when "[t]he offender showed a wanton or reckless disregard for the life or property of another person[.]" MCL 777.47(1)(a). The jury found defendant guilty of fleeing or eluding a police officer causing death. Deputy Hoeksema testified that his vehicle reached speeds of 100 miles an hour, yet defendant's vehicle was still pulling away. The trial court's assignment of 10 points for OV 17 was not plain error.

Finally, defendant argues that there was no evidence that he interfered with the administration of justice to justify a 10-point score under OV 19. Ten points are appropriate if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice[.]" MCL 777.49(c). This Court has held that "[f]leeing from the police can easily become interference with the administration of justice particularly where . . . there was an effective command for the vehicle to stop, in the form of the police activating their lights and

sirens." *People v Ratcliff*, 299 Mich App 625, 633; 831 NW2d 474 (2013) (quotation marks and citation omitted), vacated in part on other grounds, 495 Mich 876 (2013). Deputy Hoeksema testified that he and Deputy Whitaker pursued defendant's vehicle with both their lights and sirens activated. Defendant ignored these signals and refused to stop his vehicle. This evidence supports the 10-point score for OV 19.

In sum, defendant has not demonstrated that he is entitled to resentencing due to errors in the scoring of the sentencing guidelines.

### B. JUDICIAL FACT-FINDING

Defendant did not argue at sentencing or in an appropriate post-sentencing motion that the sentencing guidelines were improperly scored on the basis of judicial fact-finding, in violation of his Sixth Amendment rights. Therefore, this constitutional issue is unpreserved, and review is limited to plain error affecting defendant's substantial rights. *Lockridge*, 498 Mich at 392.

Defendant was sentenced on July 22, 2015, one week before the Michigan Supreme Court decided *Lockridge*. In *Lockridge*, our Supreme Court held that the sentencing guidelines, which required judicial fact-finding in the scoring of the offense variables to create a mandatory minimum sentence range, and thereby constraining the sentencing court's discretion, violated a defendant's Sixth Amendment right to a jury trial. *Id*. at 364-365, 373-374, 392. To remedy this violation, the Court held that the sentencing guidelines are now "advisory in all cases." *People v Steanhouse*, 500 Mich 453, 470; 902 NW2d 327 (2017). Defendants sentenced prior to *Lockridge* who could "demonstrate that their guidelines minimum sentence range was actually constrained" by the mandatory guidelines, and who did not receive an upward departure, could establish "a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395. That is, such defendants were entitled to a *Crosby* remand, as set forth in *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005). A *Crosby* remand requires the trial court to determine whether it would have imposed a "materially different" sentence under a correct understanding of the advisory nature of the guidelines. *Lockridge*, 498 Mich at 397.

In *Lockridge*, like this case, the defendant did not preserve his Sixth Amendment claim. In the context of addressing the application of its decision to other such cases, the Court stated that if the facts "admitted by a defendant or found by the jury verdict were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced[,] . . . an unconstitutional constraint [will have] actually impaired the defendant's Sixth Amendment right." *Lockridge*, 498 Mich at 395. In such a case, the defendant will have "establish[ed] a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Id*. Conversely, if the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced," the defendant cannot establish any plain error. *Id*. at 394.

In this case, the jury found defendant guilty of fleeing or eluding a police officer causing death. Although the jury necessarily found that a victim was killed, it was not required to find that defendant's body contained a controlled substance, which was necessary to support the assessment of 50 points for OV 3 and 10 points for OV 18. Likewise, the jury's verdict does not establish the factual basis for the 15-point score for OV 5 (psychological injury to the victim's family). Similarly, the jury was not required to find that there were at least two persons who were placed in danger of injury or death, which is the basis for the trial court's assessment of 10 points for OV 9, and the jury was not required to find that defendant acted in wanton or reckless disregard for the life or property of another, as is necessary to support a 10-point score for OV 17. Defendant did not admit any of these facts. Thus, all of these scores, which have a combined point value of 95 points, were dependent on judicial fact-finding. Only the factual basis for the scoring of OV 19 (i.e., defendant's fleeing from the police) was arguably established by the jury's verdict.

The trial court scored the guidelines for defendant's conviction of first-degree fleeing or eluding a police officer, which is a class B offense under the sentencing guidelines, MCL 777.16x. Defendant received a total offense variable score of 105 points. The 95 points attributable to the scoring of OVs 3, 5, 9, 17, and 18 were necessary for defendant's placement in OV Level VI (75+ points) of the applicable sentencing grid. MCL 777.63. Because the guidelines were mandatory at the time defendant was sentenced, and because defendant's placement in OV Level VI was based on judicial fact-finding, defendant has made a "threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry." *Lockridge*, 498 Mich at 395. Accordingly, defendant is entitled to a *Crosby* remand "to determine whether the court would have imposed a materially different sentence but for the constitutional error." *Lockridge*, 498 Mich at 397.

On remand, the trial court must follow the procedure described in *Lockridge*. Defendant must be given the option of promptly notifying the trial judge that resentencing will not be sought. If notification is not received in a timely manner, the trial court shall continue with the proceeding. If the trial court determines that it would have imposed the same sentence absent the unconstitutional constraint on its discretion, it may reaffirm the original sentence. If, however, the court determines that it would not have imposed the same sentence absent the unconstitutional constraint on its discretion, it shall resentence defendant. *Id.* at 396-399; see also *People v Howard*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336150); slip op at 3-4 (prescribing *Crosby* remand requirements under *Lockridge*).

## XI. RESTITUTION HEARING

Defendant argues that the trial court deprived him of due process by failing to grant him a restitution hearing. "Under the doctrine of invited error, a party waives the right to seek appellate review when the party's own conduct directly causes the error." *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004). The trial court indicated that its restitution determination was "subject to adjustment at a restitution hearing as has been reserved by your attorney." Defendant failed to pursue a hearing. Defendant has thus created the error that he alleges on appeal—the trial court's failure to conduct a restitution hearing—because he did not request a hearing for the court to conduct. Therefore, this issue is waived.

## XII. CONCLUSION

Because defendant has not established any error affecting the validity of his convictions, we affirm his convictions of first-degree fleeing or eluding a police officer causing death and driving with license suspended. We also uphold the trial court's scoring of the sentencing guidelines. We remand for the limited purpose of a *Crosby* hearing in accordance with *Lockridge*.

We affirm defendant's convictions, but remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens